THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARNOLD RUPERT *et al.* Plaintiffs in Error.

*Opinion filed February 17, 1925.*

1. CRIMINAL LAW—*court must exercise a sound discretion in passing upon motion for separate trial.* In passing upon a motion by one co-defendant for a separate trial the court must exercise sound discretion, and its action in denying the motion is subject to review.

2. SAME—*when motion for separate trial should be granted.* A motion for a separate trial by one defendant jointly indicted with another for murder should be granted where the two defendants have been antagonistic to each other since their arrest and each has made a written statement denying his own guilt and charging the other with the crime, which statements, to the knowledge of the prosecution, constitute the principal evidence upon which a conviction is to be asked.

3. SAME—*what is not a confession.* A confession is a voluntary acknowledgment of guilt and does not include a statement merely admitting incriminating facts but denying guilt entirely and charging some other person with the crime.

4. SAME—*when statements are not admissible.* Where separate written statements are made by two defendants jointly indicted for murder, in which each one denies his own guilt and charges that

the other committed the crime, neither statement is admissible, over objection, against the one not making it, and error in admitting them without limitation is not waived or cured by the fact that each defendant testified on the stand substantially in accordance with the statement made by him.

5. SAME—*general rule as to when court should order separate trial.*  Where one of several defendants indicted jointly has made admissions or confessions implicating the others the court should order a separate trial unless the State's attorney declares that such admissions or confessions will not be offered in evidence.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. WILLIAM F. BORDERS, Judge, presiding.

JOHN C. ROBERTS, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, H. C. LIN-DAUER, State's Attorney, GEORGE C. DIXON, and W. R. WEBER, for the People.

Per CURIAM: Arnold Rupert and Jimmie Dean, negroes of the ages of twenty-one and twenty years, respectively, were convicted in the circuit court of St. Clair county of the murder of William Owens, a white man.  Rupert was sentenced to death and Dean to imprisonment for life. They have sued out a writ of error to reverse the judgment.

On the night of September 22, 1923, in East St. Louis, William Owens stopped at the soft drink parlor of William Singleton, which is called in the testimony a saloon, and got a lunch, in paying for which he exhibited a roll of bills amounting to twenty or thirty dollars.  He left Single-ton's shortly before midnight for his home, which was two blocks away, and in a few moments came to the back door of his brother's house, where he was living, and called to his brother that he was shot.  His brother had heard the shot fired and jumped up and let him in.  Owens told him that two colored men had attacked him and tried to hold him up; that one held him and the little short fellow shot

him. He was shot in the abdomen. He was taken to the hospital and died the next day from the wound. The plaintiffs in error were in the saloon when Owens was there. Dean left after Owens did. Rupert claims not to have left the saloon but to have been there when the shot was fired.

The day after Owens' death the plaintiffs in error were arrested and taken to the police station, where they made separate statements in the presence of the officers and others, which were taken down by an officer and signed by the plaintiffs in error, respectively. At the January term of the circuit court they were indicted, separate counsel was appointed by the court for each, they were tried, found guilty, and Rupert was sentenced to be hanged on April 18 and Dean was sentenced to imprisonment for life.

Before the trial Rupert made a motion for a separate trial on the ground that all the evidence which would be produced by the People would not be applicable to him and Jimmie Dean; that Dean had made a statement to the police, and so far as the statement implicated Rupert he would be unable to have a fair trial if jointly tried with Dean; that Rupert had also made a statement in regard to the crime to the police officers incriminating Dean. Rupert further stated to the court in his motion that if these statements were introduced in evidence neither of the defendants would be able to procure a fair trial. The bill of exceptions does not show that the statements were before the court on the hearing of the motion, or that any other statement of their contents was made other than was contained in the affidavit. The motion was denied and Rupert excepted.

The statements of the plaintiffs in error were offered in evidence and each was objected to by the defendant not making it, but the objections were overruled and both statements were received in evidence. Dean's statement was, in substance, that Rupert asked him to walk down the street. They left the saloon about twelve o'clock or a little before

and walked west on Winstanley avenue, and to the question where he was going Rupert replied to come on,—there was something down there. Dean saw a man walking west on Winstanley avenue about twenty feet ahead of them, and then he knew that Rupert meant to stick this man up. They walked west. Dean stopped but Rupert went toward the man, and the next thing Dean heard a shot. Rupert and the man were about twenty feet from Dean. Rupert fell to the ground, then got up and ran, and Dean ran east to an alley, then by a round-about way back to Singleton's saloon, at Third street and Winstanley avenue, went inside and sat around for a while, and then went home and to bed. He did not see Rupert until the next day. He met Rupert on Third street, near Exchange avenue, and asked him who did the shooting. Rupert said he did. He asked Rupert if he hit the man. Rupert said he did not know; that the man had a pistol in his hand and that he had to shoot to get away. On Monday, September 24, Dean met Rupert at Singleton's saloon, reading a paper. Rupert called him and showed him the statement in the paper about the shooting. Dean asked Rupert what he was going to do, and Rupert replied that he was not going to do anything, as they did not know who shot Owens. He further stated that the revolver the police had was the same one that he saw Rupert have. It was a 38-caliber Smith & Wesson nickel-plated revolver, No. 81,826.

Rupert's statement was, that at Singleton's saloon Dean came to him and asked him to loan Dean his revolver, and to the question, "What for?" answered that a negro named Charles Yates was trying to kill him. Rupert loaned him the revolver. Dean left the saloon and Rupert did not see him any more that night. About an hour after Dean left a shot was heard outside and everybody ran to the door, but the proprietor told them all not to go down there, and everybody went back into the saloon. Rupert then went with some others in a machine to Brooklyn and stayed there all

night, getting back about 5:30 the next morning, when he went home and went to bed. He got up about nine o'clock and went to Singleton's saloon, where he met Dean and asked him for the revolver, and also asked him if he did that shooting last night, and he said no. Then Dean said he was going to tell Rupert something but did not want him to tell anyone about it. Rupert asked Dean again if he did the shooting and he said yes; that he was trying to make something last night and the guy made a gun play and Dean had to get him. Rupert asked him if he killed the man, and he said he did not know but he did know he hit him. Dean told him that he shot at the man one time and the man ran, and Dean turned and ran away. He gave Rupert the revolver. Rupert talked with Dean again about the shooting after he had read a paper and saw that the man was in the hospital. He asked Dean if he was going to leave town. Dean said no; that he was going to stay around and see how the man was getting along. The next day, Monday, they read in the paper that the man had died. Dean then told him that all he had to do was to keep his mouth closed and to tell Singleton to do away with the revolver. The police had the revolver. He (Rupert) took it from Singleton's saloon. It was a 38-caliber Smith & Wesson nickel-plated revolver, No. 81,826. It was the property of Singleton. Singleton did not know that Rupert had taken the gun but later he told Singleton about it.

After the foregoing statements were made Rupert and Dean were placed in jail and there they made two other statements, each of them being, in substance, the same as the two already set out in this opinion. All four of the statements were introduced in evidence over the objection of each of the defendants.

William Singleton, proprietor of the saloon, testified for the People that he heard the shot fired and told the crowd not to go out. Rupert and Dean were both in the saloon before the shooting but were not there when the shooting

occurred. They were there all of the time before the shoot-
ing, and it could be possible for them to have been there
after that without his seeing them. There were about forty
or fifty people in his place that night. After the shooting
Rupert came into the saloon first and Dean came in after-
wards. He identified the gun as his and said Rupert and
Dean knew where he kept it, Rupert having worked for
him at the saloon before that time. Rupert told him that
he had taken the gun and that he had shot at some tele-
phone posts on the railroad. He stated, over the objections
of the defendants, that Rupert said he got the pistol and
gave it to Dean to protect himself against Yates, and that
Dean told Rupert that he shot Owens. When Rupert gave
him back the pistol he noticed it was freshly shot, and Ru-
pert said that he did not do it but that Dean did. There
were two empty shells in the gun and two other cartridges
were gone, which he found in front of his place the next
morning.

The foregoing was all the evidence in the case except
the testimony of several witnesses who witnessed or heard
the statements of the defendants that were offered in evi-
dence, all of whom testified that the statements were vol-
untarily made, without any promise of reward or of favor
of any kind and without compulsion or threats. The rec-
ord does show that on rebuttal the People offered a record
showing the conviction of Rupert for a criminal offense,
but the record does not show the character of the offense
and fails to show any part of that record. Both defendants
took the witness stand and testified in their own behalf to
the same facts, in substance, as appear in their four state-
ments. Each defendant objected to the other defendant tes-
tifying and specifically objected to the other defendant's
testimony that incriminated him, but their objections were
overruled.

It is argued by defendants' counsel that it was error to
deny Rupert's motion for a separate trial. It is argued by

the People that the granting of a separate trial of defend-
ants jointly indicted rests in the discretion of the trial court.
It is true that this is a general rule often stated, but it has
been as often stated that the court must exercise a sound
discretion in overruling such a motion.  It cannot be a mat-
ter of serious doubt that both defendants in this case were
very much prejudiced by the fact that they did not have
separate trials.  The only incriminating evidence in the case
against the defendants is to be found in the statement of
the one against the other.  Their voluntary statements have
been referred to by the People as confessions.  There was
not really a confession made by either of the defendants,
and it is clear that the People used the statement of one
of the defendants mainly for the purpose of convicting the
other.  A confession has been defined by this court to be
a voluntary acknowledgment of guilt, or a voluntary ac-
knowledgment by a person charged with the commission of
a crime that he is guilty of the offense or that he partici-
pated in committing the crime.  (1 Pope's Legal Def. 258;
*Johnson* v. *People,* 197 Ill. 48; *Michaels* v. *People,* 208 id.
603.)  The term "confession" is limited to the criminal act,
and does not include statements, declarations or admissions
of fact incriminating in their nature or tending to prove
guilt.  (*Michaels* v. *People, supra.*)  The statement of each
of the defendants, as to himself, simply amounts to a dec-
laration or admission of some facts tending to incrimi-
nate him.  "No man can confess for anyone but himself."
(*People* v. *Anderson,* 239 Ill. 168.)  We believe that if
the People had been trying one of these defendants sepa-
rately and he had offered his own statement the People
would have objected to the main part of it on the ground
that it was a self-serving declaration, made for the purpose
of exonerating him from participation in the crime charged,
and that is really just what the statement amounts to.  These
alleged confessions were in the hands of the People, who
well knew their contents and yet resisted the motion, neces-

sarily knowing that they would rest almost their entire case as to each defendant upon the declaration of the other. They thereby deliberately led the court into error in over-ruling this motion. In the case of *People* v. *Buckminster,* 274 Ill. 435, this court laid down the rule that where one of several defendants jointly indicted has made admissions or confessions implicating others, a severance should be ordered unless the attorney for the State declares that such admissions or confessions will not be offered in evidence on the trial. It would have been better, as a matter of pre-caution, if Rupert had set forth in his motion the charac-ter or nature of the admission and confession of his co-defendant, Dean, but the information was in the hands of the People, and the court should have taken the precaution to ascertain the nature of the incriminating evidence, or have taken the statement of Rupert as true that the alleged confession of Dean incriminated Rupert. This error was so serious that we must hold it was reversible error to over-rule the motion for a severance.

The court also committed very serious error in admit-ting the alleged confession of each defendant against the other. The objections were very specific and covered every ground necessary for the protection of the defendants. The court did not even limit, either in its rulings or in its in-structions, the declarations of either defendant to the one making them. It is argued that both defendants waived or cured this error by going on the witness stand and testify-ing to the same facts, in substance, alleged in their declara-tions. Each defendant, as already stated, was represented by different counsel. Dean testified first, and Rupert had no alternative except to rest his case on the improperly ad-mitted declaration of himself, counteracted by the improper declaration of Dean and Dean's testimony on the witness stand implicating Rupert, or take the witness stand himself. The defendants were antagonistic to each other from the time they were arrested, and as appears from the record

counsel for neither of them was able to protect his client against the statement of the other, which the court, over their objections, had improperly admitted in evidence. It is so manifest that the defendants have not had a fair trial that we are not disposed to consider the fact that they went on the witness stand and testified in their own behalf as offsetting the errors committed against them or to hold that they waived the errors committed against them by testifying. The testimony of Singleton, objected to by the defendants, was error of the same character against Dean as the statement of Rupert against him.

The judgment of the circuit court is reversed and the cause is remanded.

*Reversed and remanded.*