(No. 19740.— ▮▮▮▮▮▮▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LEONARD BARRAGAN, Plaintiff in Error.

*Opinion filed December 20, 1929.*

KETTLES & BIDWILL, and SAMUEL G. RAUTBORD, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JOEL C. FITCH, (EDWARD E. WILSON, and JOHN HOLMAN, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, Leonard Barragan, was indicted in the criminal court of Cook county, with William Drury and Frank Brodie, for robbery with a gun. A separate trial was granted to Barragan and Brodie. Drury pleaded guilty and was sentenced to the penitentiary. The jury returned a verdict of guilty against both Barragan and Brodie. Barragan brings the cause here for review.

The victim of the robbery was one Oscar E. Wagner, who testified that he conducted a weighing machine business at 315 North Leavitt street, in the city of Chicago; that

on the evening of May 24, 1928, about a quarter to six, Brodie came in, pointed a gun at him and told him to "stick 'em up, and be quick about it," and that a little later George J. Wiberg, Wagner's partner, came in with his hands in the air and Drury was back of him with a gun. Wagner testified that Brodie took whatever money the witness had in his pockets, searched Wiberg and ordered the witness to open the safe. This being done, Brodie and Drury took a ten-dollar bill from the safe and a bag containing some old coins. They then left and got into a car standing about fifty or sixty feet north of the building. There was another man sitting at the wheel. The witness was unable to identify him, as he did not get a good look at him. He testified that about $17 or $18 was taken from his person and $10 and the coins from the safe. Wiberg corroborated Wagner as to what occurred in the office and testified that he was on the outside when held up by Brodie and brought inside the office. These witnesses identified Drury and Brodie.

Drury was returned from the penitentiary and placed upon the stand as a witness by the court. He testified that he committed the crime charged in the indictment; that Barragan and Brodie were not with him but that one Joseph Gough and one Frank Brisko were with him. He was then shown a statement purported to have been made by him at the police station. Counsel for plaintiff in error objected to questions put to Drury concerning this statement, but his objections were overruled. Drury was asked if his signature appeared at the bottom of the statement. He answered that it looked like it but that he did not remember writing any name, as he was intoxicated. Various questions and answers appearing in the statement were then read to him and he was asked if he made such answers, to which he replied that he had not. One of these questions was as follows: "Who was with you in the stick-up of this place?" Answer: "Barragan and Brodie." Counsel for plaintiff in

error objected to this question and answer on the ground that neither Barragan nor Brodie was present at the time the alleged statement was made. The court, however, overruled the objection. Drury was also asked whether in that statement he had been asked by Sergeant Nagle, in the presence of Otto Seils, the following question: "Where did you meet Brodie?" and whether he answered: "I met them both at Harrison and Western avenue about 12:30 P. M., Thursday, May 24, 1928." Objection was made to this question and was overruled. Another question and answer appearing in the statement were as follows: Question: "When you were in back of the post-office you talked about a stick-up. Is that it?" Answer: " 'Bibbs' Barragan asked me if I could get a gun, and I said, 'Yes, I have two but they are at home.' Then I went home and got the guns." Counsel for plaintiff in error objected to this question and answer and his objections were overruled. The witness answered that he had not so stated. He was then asked as to the following question and answer: Question: "Did you ask Barragan what he wanted the gun for?" Answer: "Yes. He said he wanted to make some money." Objection to this question was overruled but the witness does not appear to have answered. He was asked as to the following question and answer: Question: "Who was with you when you stuck up that place?" Answer: "Brodie and myself went inside and Barragan was at the wheel outside." Objection to this question was also overruled and the witness answered: "No, sir." Otto Seils, a police officer, was then placed on the witness stand and testified that on the 26th of May, at the Warren avenue police station, he transcribed the questions that were put to Drury and his answers, and testified that the questions and answers as put by the State's attorney to the witness Drury were asked of Drury and answered by him as stated in the questions of the State's attorney. To all this counsel for plaintiff in error objected on the ground that Drury was not in the

presence of Brodie or Barragan at the time the statement was made. The court overruled the objections and instructed the jury that the questions put to Drury and answers made by him were received in evidence by the court on a theory of impeachment of the witness Drury and for no other purpose.

The witness Seils also testified that on May 26, 1928, at the Warren avenue police station, he transcribed certain questions asked of Barragan and answers made by him. The jury at this point were withdrawn and counsel for the plaintiff in error questioned the witness as to this statement. On this examination he testified that it was made about 1:05 P. M. on May 26; that there were present Sergeant Nagle, officers Hartigan and Bishge, and Barragan and the witness; that Nagle said to Barragan: "Sit down; I want you to make a statement for me;" that Barragan said he would make a statement but he would not sign it; that Nagle asked the questions, which the witness typed with the typewriter; that Barragan answered the questions, and his answers were likewise typed by the witness, and that Barragan did not sign the statement though witness asked him to do so after it was written up. The witness stated that he had filed away this typed statement at the police headquarters; that he was transferred therefrom and had not seen the statement until handed to him the day before he testified, by a police officer. He testified it was his work. None of the officers who according to Seils' testimony were present at the time of making the statement were called to testify. Plaintiff in error, Barragan, was sworn and denied making the statement. He testified that he was asked if he wanted to make a statement, and he replied that he had no statement to make. The jury were then recalled, and Seils was directed by the court, over the objection of counsel for plaintiff in error, to read the questions and answers. The substance of these questions and answers is as follows: Barragan stated that he lived at 709 South Kedzie avenue;

that his occupation was a setter; that he had not been employed for about a month; that he was twenty-nine years of age; that he knew that he was at the Warren avenue police station, arrested for robbery; that he was warned that anything then stated might be used for or against him at some future time and asked if he wished to make a statement; that he answered he would make a statement but didn't want to sign it; that he knew Drury; that he met Drury and Brodie on Thursday, May 24, 1928, at Western and Harrison streets; that they went in back of the American Express Company and had some drinks out of a bottle; that he asked Drury if he had a gun and told him that they were going to pull a stick-up; that Drury said he had two guns at home; that they went into the alley back of the post-office and drank some moonshine whisky, and went to Drury's home and got the gun and from there went to the back of the post-office again and had more whisky, and from there to 317 North Leavitt street, in front of a machine shop; that Barragan was driving the car and Brodie and Drury got out and went into the machine shop; that they came back and said, "Go ahead;" that he drove away as quick as he could; that he (Barragan) got nine dollars out of the holdup; that he had no gun on this job; that he had known Drury about a year and Brodie about six years and that he had not been mistreated in any way by the police officers.

The defense of plaintiff in error was that of alibi. In this he was corroborated by Mollie Devitt and a Mrs. Horney, aunts of plaintiff in error, who testified that he was at Mrs. Devitt's house during all of the day of the robbery and until shortly before he was arrested the next day.

The objection urged here is to the admission of the testimony of officer Seils concerning the statement made by Drury out of plaintiff in error's presence at the time of the former's arrest. This statement made out of the presence of plaintiff in error, though offered for the purpose of

impeaching Drury by showing that he had made a statement out of court differing from his testimony on the witness stand, was hearsay and was incompetent and immaterial as against plaintiff in error, who was then on trial. (*People* v. *Buckminster,* 274 Ill. 435; *McCann* v. *People,* 226 id. 562; *People* v. *Johnson,* 333 id. 469.) What Drury said to the officers out of the presence of plaintiff in error as to the latter's guilt was not evidence and could not be received as such against the latter on the trial of the charges against him. The whole purpose of the offer was to get before the jury evidence of Drury's unsworn statement that Barragan participated in the crime. The admission of this statement was highly prejudicial to Barragan. (*People* v. *Dascola,* 322 Ill. 473; *People* v. *Johnson, supra.*) Plaintiff in error denied that he had made any statement to the officers. The paper which the witness Seils testified was a statement of the plaintiff in error was not signed, and no other officers present were called to testify concerning the making of the statement or its correctness. Therefore the question whether plaintiff in error made a statement to the officers was one directly contradicted. No one identified plaintiff in error as having anything to do with the robbery. Drury, as a witness called by the court, testified that he was not there. The evidence against plaintiff in error is the confession testified to by the witness Seils, which plaintiff in error denies making, and the incompetent statement of Drury, who was not on trial. The incompetent evidence bore directly on the question of plaintiff in error's presence at the scene of the crime. His defense was an alibi. In this condition of the record the first statement made by Drury would have but a prejudicial influence on the minds of the jury.

The judgment of conviction, therefore, must be reversed and the cause remanded for re-trial.

*Reversed and remanded.*