(No. 22402.—

The People of the State of Illinois, Defendant in Error, *vs.* John W. Grigsby, Plaintiff in Error.

*Opinion filed June 19, 1934.*

142

J. D. WILSON, for plaintiff in error.

OTTO KERNER, Attorney General, JOHN W. COALE, State's Attorney, and J. J. NEIGER, for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

Plaintiff in error, John W. Grigsby, was indicted in the circuit court of Christian county on a charge of assault with intent to murder. He was tried and convicted and prosecutes this writ of error to review that judgment.

At about 10:00 o'clock in the evening of September 8, 1933, James Walker and James Cameron were shot and wounded on or near a highway about nine miles south of Taylorville, which was the assault for which plaintiff in error was indicted. Walker testified that he left Taylorville about 10:00 o'clock P. M. in an automobile and that about two miles out of Nokomis he picked up a man who was walking; that he was not then acquainted with this man but learned afterwards that his name was James Cameron; that at the home of a Mr. Fine they stopped to go into his residence for a drink of water, at which time another car which had been following them came along and also stopped; that when he and Cameron got out and started across the road the occupant of the following car commenced shooting, wounding the witness in the wrist and chest and then shot Cameron, after which the assailant got in his car and drove away. The witness identified the man who did the shooting as the plaintiff in error, Grigsby, and testified that he had known him for thirty-five years, living two miles from him and within a half mile of the scene of the shooting. He also testified that he and the defendant were friendly and had never had any trouble. After the shooting the witness went into the Fine residence but found no one at home, then drove to Shafer's, then to Cameron's, then to Vanderville's store, from which place an ambulance was called and he was taken to the hospital.

James Cameron, the other man assaulted, testified that he received a flesh wound over the heart. In general he corroborated the testimony of Walker except on the vital point of identification. As to that he stated that it was

not the plaintiff in error who shot him but that his assailant was a larger man. He testified that there was only one man there at the time of the assault and that he was quite certain that man was not the plaintiff in error.

Mary Lockard was called for the People for the purpose of proving that the defendant had come to her home late the night of the shooting and told her that he "had just shot a couple of guys." After a few preliminary questions it became apparent that her testimony would not be satisfactory to the State's attorney, who thereupon started asking leading questions. After objections by the defendant to the procedure were made and sustained the jury was taken from the room, and the State's attorney then stated to the court that he was surprised at the attitude of the witness, and presented to the court a written but unsigned statement claimed to have been taken from Mrs. Lockard the next day after the offense. The court thereupon permitted the State's attorney to withdraw the witness, and orally instructed the jury that the witness was withdrawn and that her testimony up to that time should not be considered. After the testimony of another witness, which need not be noted here, the jury was again withdrawn from the room, and the court announced his intention of calling Mrs. Lockard back to the stand as the court's witness, to permit the State's attorney to examine her. Upon objection by counsel for the defendant the court heard the testimony, out of the presence of the jury, of a stenographer for the State's attorney tending to show that a certain statement had been made by Mrs. Lockard as claimed by the prosecutor. The making of this statement was also corroborated, out of the presence of the jury, by the testimony of a deputy sheriff. The court then ruled that the witness, Mrs. Lockard, should be recalled as the court's witness. The jury was brought in and the State's attorney proceeded to question her as to statements to him and his stenographer. He was permitted, over objection

of counsel for the defense, to ask the witness a long series of questions as to whether or not she had, in response to questions read to her, made certain answers to the State's attorney on the early morning of September 9, the entire examination being in the usual impeachment form. The examination is too long to quote in full, but among other questions was the following: "And were you not further asked what else he said, and if you didn't reply that he said that he had shot a couple of guys?" As to which the witness replied, "Yes, sir." Practically the entire examination is confined to the answer, "Yes, sir," in response to the State's attorney's questions as to whether or not she had been asked certain questions and made certain answers. The answers to twenty-four out of twenty-five questions are, "Yes, sir." This was the only evidence for the People.

The defendant on his behalf introduced the evidence of certain witnesses who testified to facts tending to show an alibi, and certain other witnesses who testified that the complaining witness, James Walker, immediately after the shooting, had said that he did not know who shot him. The defendant himself denied any connection with the crime. Inasmuch as the case must be tried again, we will refrain from further comment on the evidence, except to point out that the case is at least close on the facts and one requiring a trial as nearly as possible free from error.

Plaintiff in error first contends that the court erred in overruling a motion to quash the indictment. It was proved in connection with this motion and preserved in the bill of exceptions, that the court had entered no order previous to the term requiring the presence of a grand jury. The provisions of the statute in regard to entry of an order for the calling of a grand jury are for the information and convenience of the board of supervisors rather than for the benefit of any defendant. In *People v. Donaldson,* 255 Ill. 19, it was held that the statutory requirement that a grand jury shall be selected twenty days

before the term is merely for the convenience of the sheriff. In *People* v. *Kramer,* 352 Ill. 304, it was held that although the venire was entirely void, nevertheless the grand jury appearing and being sworn in made that point immaterial. In *People* v. *Brautigan,* 310 Ill. 472, we held: "Though the statute of this State does not in express language require a grand jury to be summoned at every term of the circuit court or at any term, such requirement has been assumed, in accordance with the proceedings at common law, unless the statute has expressly provided that no grand jury be summoned." In this case the grand jury was duly selected by the board of supervisors in accordance with the statute in respect thereto. It appeared in court and was impaneled and sworn, which action by the court amounted to a ratification of the previous summoning and appearance, and, so far as this defendant is concerned, was the equivalent of a previous order.

It is next argued by the plaintiff in error that the court erred in overruling a motion for a continuance. This motion is ordinarily addressed to the sound discretion of the trial court, and in the absence of an abuse of that discretion its judgment will not be disturbed. In this case no specific ground was set forth indicating wherein the plaintiff in error would or might be prejudiced if more time was not given. In *People* v. *Dale,* 355 Ill. 330, this court held that before error can be successfully urged on this point, it must appear from the record not only that the time was asked for but that a refusal to grant it in some way embarrassed or prejudiced the defendant in his rights. No such case is made on the present record.

The indictment in this case charges that the defendant "did unlawfully make an assault upon one James Walker in the peace of the people then and there being, with an intent then and there unlawfully, willfully and feloniously, with malice aforethought, to kill and murder the said James Walker." It is urged that the indictment is fatally de-

fective in that it does not contain the word "feloniously" in connection with the word "unlawfully." This contention must be overruled under our statute in this State, regardless of what the common law rule may have been. It is provided by section 6 of division 11 of the Criminal Code, that "every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of the statute creating the offense, or so plainly that the nature of the offense may be easily understood by the jury." The indictment in this case described the time, the place and the party assaulted, with sufficient certainty to protect the defendant against the possibility of any subsequent indictment upon the same state of facts. This court is not inclined toward so technical a construction of an indictment as to serve as a protection for the guilty rather than a defense for the innocent, and we.are unable to find any substantial merit in the issue thus raised. The indictment in this case was sufficient. *People* v. *Connors,* 301 Ill. 249, and cases there cited.

Error is assigned in connection with the trial court's refusal to give certain instructions, but we are unable to consider the point. The abstract shows only those instructions given on behalf of the People and those refused to be given on behalf of the defendant. We will not search the record to determine whether or not the instructions given on behalf of the defendant sufficiently covered the points set forth in those which the court refused to give. *People* v. *Petrilli,* 344 Ill. 416; rule 14 and rule 38 of this court.

What we have said disposes of all questions of law raised by the plaintiff in error except as to the calling of the witness Mary Lockard as the court's witness. In *Carle* v. *People,* 200 Ill. 494, we held, in accordance with the general rule, that it was proper for the court to call as its own witness one who was an eye-witness to the crime and for whose veracity the prosecution was unwilling to

vouch. In that case we said: "Where the State's attorney knows that a witness was present at the scene of the killing, but for some reason, either because he has no confidence in the witness or for any other reason, he may doubt his veracity and integrity, he is not obliged to call such witness. In such case the court may call the witness and leave him open for cross-examination by either side." In the later case of *People* v. *Cleminson*, 250 Ill. 135, we said: "The practice of the court calling a witness at the request of either party in the trial of a criminal case should not be extended beyond the limits of the rule announced in *Carle* v. *People, supra,* and when the circumstances justify a court in calling a witness the cross-examination should be limited to the issues involved and kept within proper bounds." In the recent case of *People* v. *Daniels,* 354 Ill. 600, we held it was not error for the court to permit the calling of an eye-witness to the crime, but were particular and careful to point out that "the practice of the court calling witnesses, however, is not to be extended beyond this point, and the cross-examination should be limited to the issues involved."

It is to be noted that throughout these cases the cross-examination was strictly limited to the issue being tried. In the case before us the issue is not whether the defendant said "he had shot a couple of guys," but whether he in fact shot them. It is not whether he was at the home of the witness Lockard at the time claimed, but whether he was on the road at the time and place of the assault. The issue is not whether the witness Lockard is honest or dishonest, reliable or unreliable, but whether the defendant is guilty of the crime charged in the indictment. All of these matters sought to be introduced by the indirect method of advance impeachment of a witness who had not testified to the contrary are collateral to the main issue. Whether or not in a proper case they might be competent

by way of impeachment, they were entirely incompetent and extremely prejudicial as here offered on the case in chief. To permit this method of attack would be dangerous in the extreme. It would make it possible for anyone, in effect, to confess for a defendant and to do this without any liability for perjury. Anyone might with perfect safety make a false statement out of court, and not under oath, to the effect that the defendant had told him that he killed someone. When in court and under oath upon a material point, and thus subject to penalties for perjury, it is to be presumed that he would refuse to so testify. If the State's attorney could be permitted, under these circumstances, to prove, by way of advance impeachment, that the witness said that the defendant had said certain things, it would present a situation of appalling seriousness. The witness could not be indicted for perjury, the previous statement not being under oath and there being no provision for such an oath. If the witness admitted making the previous statement, it would prove nothing except that he, an admittedly unreliable witness, had said so. If the witness denied making the statement the matter would necessarily end there, because to pursue it further would be trying a collateral issue rather than a fact material under the indictment. The defendant would thus be hopelessly enmeshed in a prejudicial situation without anyone having assumed responsibility or liability for perjury.

For the prejudicial error in permitting Mary Lockard to testify, the judgment of the circuit court must be reversed and the cause remanded.

*Reversed and remanded.*