(No. 34896.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BENNIE TUNSTALL, Plaintiff in Error.

*Opinion filed September 24, 1959.*

W. ELBERT WASHINGTON, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH and WILLIAM H. SOUTH, Assistant Attorneys General, and FRANCIS X. RILEY, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Defendant, Bennie Tunstall, who was indicted with one James Webb on a charge of armed robbery, was convicted after a separate jury trial in the criminal court of Cook County and was sentenced to the penitentiary for a term of one to ten years. He prosecutes this writ of error contending (1) that he was not proved guilty beyond a reasonable doubt, (2) that the jury, rather than the court, should have fixed his punishment, and (3) that the admission of prejudicial and incompetent evidence denied him a fair trial.

At approximately 3:00 P.M. on September 6, 1955, Abraham Katzman, an insurance agent and collector, was held up and robbed of $75 by two men, one of whom was armed with a gun, in the first floor hallway of a two-story flat building at 1428 Sawyer Avenue in Chicago. Katzman had just descended a stairway from the second floor and it was his testimony that the hallway was well lighted and that the two men were in his view as he descended from a landing in the stairs. The incident was one of a series of holdups involving insurance agents and, based upon information given by one victim, the police arrested James Webb after tracing license plates on a car. On the day of the arrest, October 17, 1955, Katzman pointed out Webb from a police lineup as one of the men who had robbed him. When questioned Webb named defendant as his accomplice. Two days later, when Katzman was in the court building to attend a preliminary hearing for Webb, he identified defendant as the second robber by selecting the latter's photograph from a group of six pictures exhibited to him by the police.

Efforts to apprehend defendant were unsuccessful but, on October 25, he surrendered to the police after learning from his mother a warrant had been issued for his arrest. Although defendant denied any knowledge of the crime his

indictment and conviction followed. At the trial his mother and sister gave alibi testimony, rendered completely speculative on cross-examination, to the effect that defendant had been at home on the day of the crime caring for his father who died prior to the trial.

When testifying for the People, Katzman described the holdup, identified defendant from the witness stand, stated that Webb had been the robber armed with a gun, and related how he had identified defendant's photograph prior to the latter's arrest. In response to cross-examination he conceded he had not viewed defendant in a lineup and described only in general terms the manner in which defendant was dressed at the time of the robbery. At the same time, however, he stated he was able to identify defendant because of the opportunity he had to view his assailants as he descended the stairs.

Defendant now urges the identification evidence is so unsatisfactory as to create a reasonable doubt of his guilt because he was not picked out from a group of prisoners, because Katzman was unable to describe his clothing with particularity, and because Katzman did not testify either to physical features or "irregularities" which would distinguish defendant from other persons. While the elements referred to have, in some cases, been recognized as having some weight, they are neither controlling nor a prerequisite to identification. The method or manner of identification is, rather, a matter which goes to the weight rather than the admissibility or competency of identification evidence. (See: *People* v. *Thomas*, 409 Ill. 473; *People* v. *Thompson*, 406 Ill. 555; 14 I.L.P., Criminal Law, sec. 315.) Ordinarily the question of whether an accused has been identified as the perpetrator of a crime is a question of fact for the jury and, upon review, we will not reverse a conviction on the question of the sufficiency of the identification unless it is contrary to the weight of the evidence,

or is so unsatisfactory as to justify a reasonable doubt of a defendant's guilt. *People* v. *Keagle*, 7 Ill.2d 408; *People* v. *Ortega*, 5 Ill.2d 79.

A reading of all the testimony in the record leads us to a conviction that the identification of defendant was positive and convincing. The proof reveals that Katzman, at the time of the robbery, had ample opportunity to view his assailants under such favorable conditions as would permit him to know and identify them. Indeed, his subsequent identification of Webb from a police lineup, coupled with the latter's admission of his own guilt, bear mute testimony to the ability of the witness in such respect. Added to the favorable opportunity for observation is the evidence which shows that Katzman, within a reasonable period after the crime, unhesitatingly identified defendant as the second man who robbed him by selecting defendant's picture from a group of photographs exhibited to him by the police. Such a method of identification is commonplace and there is no suggestion here of any unfairness or irregularity in its execution. The testimony of one witness as to identification, if positive and the witness credible, is sufficient to convict even though the testimony is contradicted by the accused. (*People* v. *Tomaszewski*, 406 Ill. 346; *People* v. *Mosher*, 403 Ill. 112.) Here the testimony of Katzman was not impeached or shaken upon cross-examination and, from the entire record, we cannot say that the nature of the identification is such as to raise a reasonable or well founded doubt of defendant's guilt.

As a further ground for reversal defendant contends that the judgment against him is void because the court, rather than the jury, fixed the length of his confinement. In support of such contention he relies upon subparagraph (a) of section 6a, division XIV of the Criminal Code. (Ill. Rev. Stat. 1955, chap. 38, par. 754a(a).) That section, however, by its own terms, has application only if the Sentence and Parole Act is not applicable. (See: *People* v. *Tucker*,

13 Ill.2d 15, 19; *People v. Barg,* 390 Ill. 201, 203.) Section 2 of the Sentence and Parole Act, (Ill. Rev. Stat. 1955, chap. 38, par. 802,) in turn provides that, except for crimes enumerated in section 1 of that act, (misprision of treason, murder, voluntary manslaughter, rape or kidnapping,) the court imposing a sentence to the penitentiary shall fix the minimum and maximum limits or duration of imprisonment. Defendant was indicted, tried, and convicted of the crime of armed robbery as defined in section 246, division I of the Criminal Code (Ill. Rev. Stat. 1955, chap. 38, par. 501,) and since this is a crime to which the provisions of the Sentence and Parole Act apply, his contentions based upon section 6a must fail. The court properly fixed the duration of his imprisonment.

After his mother and sister had given alibi evidence in his behalf, defendant called James Webb as a witness. On direct examination the latter stated he was the same James Webb who had been charged with the crime being tried, that defendant was not with him when he committed the crime, and that defendant had nothing to do with the robbery. Upon cross-examination Webb again testified he had committed the robbery alone and, over objection of defendant's counsel that the scope of direct examination was being exceeded, was interrogated in detail concerning his arrest, identification, previous attempts to rob Katzman, and his plea of guilty and conviction for the crime for which defendant was being tried, as well as three other armed robberies. Webb admitted signing a typed statement on the day of his arrest but testified that he had not read it and that it had been coerced. When shown the statement he admitted giving answers that he was not alone on the robbery, and that defendant was with him, but stated that those answers were untrue. Not content with thus having raised an issue as to Webb's credibility, the prosecutor interrogated Webb concerning each question and each answer, then, after introducing police testimony that the

statement had been voluntarily given by Webb, culminated the trial by reading the entire statement into evidence. The statement, which was made outside defendant's presence and never assented to by him, set forth in detail defendant's participation in the planning, execution and spoils of the robbery. Inasmuch as the jury was neither informed nor instructed that the statement could be considered only for the limited purpose of determining Webb's credibility, (see: *People* v. *Carmichael*, 314 Ill. 460; *People* v. *Brewer*, 355 Ill. 348,) its introduction into evidence left the jury free to look upon it as further evidence of the defendant's guilt. If, from the competent evidence already admitted, the jury entertained any doubts that defendant was guilty, it would be difficult, if not impossible, to remove the impression of guilt which would follow from such a statement.

No man can confess to a crime for anyone but himself. (*People* v. *Rupert*, 316 Ill. 38.) Because of this simple and just rule the law is well settled that confessions or admissions of a co-defendant, or those of a witness against an accused, are not admissible in evidence against such accused unless made in his presence and assented to by him. When this principle is applied to the facts of the present case it is manifest that Webb's statement was not competent evidence against the defendant.

The People do not contend to the contrary but assert that the use of the confession became proper in the case when the need arose to impeach the testimony of Webb. Fundamental justice, however, will not countenance accomplishment by indirection of that which it will not permit directly. (See: *People* v. *Childress*, 1 Ill.2d 431.) Accordingly, we have held that the admission of a confession or statement made outside the presence of a defendant is not competent, even for the purpose of impeachment, where such statement or confession bears directly upon a defendant's guilt or innocence of the crime, and is likely to have a prejudicial influence on the minds of the jury. See:

*People* v. *Hundley,* 4 Ill.2d 244; *People* v. *Barragan,* 337 Ill. 531; *People* v. *Buckminster,* 274 Ill. 435.

In the *Barragan case,* where the facts are strikingly similar to those in the present case, one Drury, who had already been convicted of the crime for which Barragan was being tried, was called as a witness by the court and testified he had committed the robbery in question and that Barragan was not with him. Thereafter, the trial court permitted a police officer to read to the jury a statement made by Drury at the time of his arrest wherein he gave a detailed account of Barragan's presence and participation in the robbery. Upon review this court condemned the introduction of the statement into evidence as follows: "This statement made out of the presence of the plaintiff in error, [Barragan], though offered for the purpose of impeaching Drury by showing he had made a statement out of court differing from his testimony on the witness stand, was hearsay and was incompetent and immaterial as against plaintiff in error, who was then on trial. [Citations.] What Drury said to the officers out of the presence of plaintiff in error as to the latter's guilt was not evidence and could not be received as such against the latter on the trial of the charges against him. The whole purpose of the offer was to get before the jury evidence of Drury's unsworn statement that Barragan participated in the crime. The admission of this statement was highly prejudicial to Barragan."

It is apparent from the language of the *Barragan case* that it is futile to contend that Webb's contradictory testimony served to make his statement competent against defendant, or that its admission into evidence was harmless error. The statement was made outside defendant's presence, was not assented to by him and, in view of his own testimony of denial and alibi, could only have resulted in prejudicial influence in the minds of the jurors, particularly since its use and purpose in evidence was in no manner

limited. Moreover, from the prosecutor's action in bringing each and every detail of Webb's statement to the attention of the jury, suspicion attaches that he was not motivated by a purpose of impeachment alone, but also by a desire to get before the jury Webb's statement that defendant had prepared for the crime, assisted in its commission, and shared in its spoils.

For the foregoing reason the judgment of the criminal court of Cook County is reversed and the cause remanded for a new trial.

*Reversed and remanded.*