THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GRADY KIMBROUGH, a/k/a JAMES CAMPBELL, Defendant-Appellant.

(No. 53403; )

First District—December 14, 1970.

*Rehearing denied January 13, 1971.*

Gerald W. Getty, Public Defender, of Chicago, (Mary Cahill and
James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

38

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and James H. Feldman, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LYONS delivered the opinion of the court:

The defendant, Grady Kimbrough, was indicted for murder. After a trial by jury, he was found guilty and was sentenced to the Illinois State Penitentiary for not less than twenty nor more than thirty years. On appeal, the defendant contends: (1) that the trial court erred by admitting into evidence hearsay testimony of a highly prejudicial nature; (2) that the motion to suppress physical evidence, i.e., a .38 caliber pistol, was erroneously denied; (3) that the evidence was insufficient to establish his guilt beyond a reasonable doubt; and (4) that the trial court erred by permitting a gun to be introduced into evidence.

Prior to trial a hearing was held concerning defendant's motion to suppress the alleged murder weapon. At this hearing, Officer Wesley Broderson of the Chicago Police Department testified that he had been assigned to conduct a follow-up investigation in the murder of J. D. Davis. Davis had been shot to death on September 18, 1966, in the Smoot Village Tavern, 2658 W. Van Buren Street, Chicago. During the course of his investigation in the early morning hours of September 19th, Officer Broderson was informed by one Joyce Brown, an alleged eyewitness to the offense, that the perpetrator was a man named "Sweets." Miss Brown led Officer Broderson to "Sweets'" employer where the officer determined the identity of the defendant. Broderson then proceeded to 2732 West 26th Street, an address indicated on the defendant's employment records, and had a conversation with one Anita Roman, the defendant's sister. Miss Roman told Broderson that the defendant did not reside with her and she denied any knowledge of the defendant's whereabouts. Broderson then searched the apartment and encountered five or six children. From one of these children the officer obtained an address of 6831 South Stony Island Avenue, the address of defendant's mother. The officer proceeded with haste to the Stony Island address and knocked at the door of a third floor apartment. A woman answered and asked Broderson what he wanted. Broderson identified himself and explained his purpose. The woman asked him to wait a moment. The officer testified that he then heard the sound of running and other loud noises from within the apartment. He then pushed in the door and ran through the apartment to the back porch. He heard footsteps going down the back stairs and he ran down to the second floor porch. He indicated that he then observed a shape moving across the roofs which were adjacent to the porch. He

saw this shape go over the edge of the third roof and heard "what sounded like feet landing in the alley," followed by the sound of running.

Officer Broderson stated that he returned to the third floor apartment and conversed with the woman who was there. He learned that she was Nora Evans, the defendant's common-law wife. According to Broderson, Miss Evans then told him that she didn't open the door right away because she feared that someone would get shot. The officer further testified that he was informed by Miss Evans that the defendant, Grady Kimbrough, had been in the apartment and had left a gun there. Broderson stated that he noticed a purse lying on a desk and asked Miss Evans if the gun was in the purse. She replied that it was and Broderson opened the purse and removed a ".38 caliber police special revolver with five live cartridges and one empty that had been fired." Miss Evans was then taken to the police station for additional questioning. Broderson stated that he had no search warrant for the premises at 6831 South Stony Island.

Anna M. Jones testified that she was the defendant's mother and was residing alone at 6831 South Stony Island during September 1966. Mrs. Jones was unable to recall specific dates, but stated that Nora Evans had stayed overnight with her on one occasion during September 1966. The next morning Mrs. Jones left for work about 6:00 A.M. and Nora Evans remained in the apartment. When she returned from work about 4:00 P.M., Mrs. Jones found that Miss Evans was gone, the doors were wide open and the apartment was "ramshackled." Miss Evans informed her the next day that the police had searched the apartment. Mrs. Jones was not present during the search and gave no consent for the search. She indicated that she was awakened by police about 3:00 A.M. on a morning subsequent to the search and was taken to the police station.

Upon the foregoing evidence, the court denied the defendant's motion to suppress the alleged murder weapon. The court found that Officer Broderson had reasonable grounds to believe that Grady Kimbrough had committed the crime, that Kimbrough was within the premises at 6831 South Stony Island Avenue, when he arrived there and that a weapon, which was an instrument involved in the crime, was within the premises. Thus, the court concluded that the search was reasonable under the circumstances of the case. The court also noted that the defendant did have standing to challenge the legality of the search.

At trial, the State's first witness was Henry Robinson. Mr. Robinson testified that he arrived at the Smoot Village Tavern about 4:00 P.M. on September 18th. He drank a beer and then played pool. About 5:30 P.M. he went to the bar and ordered another beer. The deceased was sitting at the bar and a young man with two women was standing nearby.

Robinson noticed the young man put some money in the juke box and Robinson asked him "to punch a number for me." The young man gave Robinson a quarter and told him to play what he wanted. Then, according to Robinson, a woman came over to him and started cursing at him. Robinson told her to get back and she ran over to another man who was sitting on a radiator near the door. The woman put her hand in the man's shirt and Robinson "rushed to him and pushed both of them out of the door." Robinson stated that he started for the men's room and "[t]hen I heard someone scream and I looked back and when I looked back toward the door, I seen an arm go up and at that particular time I jumped over the bar." He then heard a shot. At the time he heard the shot, Robinson was laying on the floor behind the bar. When he got up several minutes later he saw the deceased lying on the floor. Robinson did not see who fired the shot which killed J. D. Davis and was unable to identify anyone in the courtroom as the man with whom he had altercated.

Nellie Diggs, a part-time waitress at the Smoot Village Tavern, testified that there were about twelve or thirteen people in the tavern at 6:45 P.M., September 18, 1966. A Puerto Rican man and two Negro women came into the tavern and, shortly thereafter, a fellow wearing a trench coat entered. The fellow wearing the trench coat ordered a beer and went over to sit on a radiator. The Puerto Rican man and the two women played the juke box and danced. The witness saw Henry Robinson go over to the juke box and overheard Robinson quarreling with one of the women. Miss Diggs stated that she heard Robinson call the woman a dirty name and then saw the woman go over to Kimbrough, the man in the trench coat. Robinson followed her and a brief scuffle ensued among the woman and two men. The three went out the door into the vestibule. Miss Diggs indicated that she then saw Robinson reenter the tavern and run toward the men's room. She saw Kimbrough, who had a gun in his hand, run back into the tavern and fire across the bar at Robinson. After the shot was fired, Miss Diggs stated that she saw a man, who had been sitting at the bar drinking, fall off his stool onto his back. Most of the tavern patrons then ran from the premises.

The witness was shown a gun (People's Exhibit No. 1) by the prosecutor and was asked if she had ever seen it before. She responded: "The handle looks familiar, the handle was the same color. I don't know whether it is the same gun, but the handle was the same color." The witness was then asked to demonstrate how the defendant walked into the tavern with the gun and fired across the bar. After doing so, she testified that the deceased had been shot between the eyes.

After the testimony of Charles Davis, an uncle, who served as the life

and death witness, the State requested that Nora Evans be called as a court's witness because the State could not vouch for her veracity. The prosecutor indicated that Miss Evans had significantly changed the story which she had told the police shortly after the offense. The court denied the State's request and suggested that she be called as a State witness "until showing is made that there is just cause for the calling of her as the court's witness."

Dr. Eugene Tapia, Assistant Director of Pathology at the Cook County Coroner's Morgue, testified that J. D. Davis died of a close range bullet wound in the brain. The pellet was removed from the deceased's brain and was given to the police.

Officer Wesley Broderson testified substantially the same as he had at the motion to suppress hearing. The prosecutor showed him People's Exhibit No. 1 and the officer indicated that it was the same gun which he had removed from Nora Evans' purse.

Detective Anton Bielski testified that Officer Broderson gave him a gun which he took to the Crime Detection Laboratory. He identified People's Exhibit No. 1 as being the same weapon. The officer also took the pellet which was taken from the deceased's brain to the crime laboratory.

Bert Nielson, a firearms identification technician employed with the Chicago Police Department Crime Laboratory, testified that he was unable to identify People's Exhibit No. 1 as the gun which fired the pellet recovered from the deceased's brain.

Nora Evans appeared as a State witness and testified that she was babysitting with Nita Roman at 2732 West 26th Street on the evening of September 18, 1966. She left about 8:00 P.M. and went to the apartment of Anna Mae Jones, the defendant's mother, where she stayed the night. Miss Evans stated that the police came to the apartment about 6:00 A.M. after Mrs. Jones had left. She indicated further that she had not seen Grady Kimbrough the night of September 18th, had not conversed with Kimbrough and did not observe the police remove a pistol from her purse.

At this point, the State moved to have Nora Evans called as a court's witness because "she has testified contrary to the statement she had made to Wes Broderson, a police officer * * * which is contained in the police report." Defense counsel vigorously objected to the State's motion but, after a closed hearing in which Officer Broderson testified that Nora Evans had given him a contrary story when he spoke with her shortly after the time of the offense, the court overruled the objection. The court then instructed the jury that Nora Evans was being called as a court witness because she might have information material to the issues in the case and because the State could not vouch for her veracity.

Now appearing as a court witness, Miss Evans testified on direct examination that she had a conversation with Officer Broderson on September 19, 1966, at the defendant's mother's apartment. She indicated that she was asked many questions but did not answer those questions and, in fact, said nothing at all to the officer. The court at this point admonished the jury that anything Miss Evans said to Officer Broderson outside the presence of the defendant was being admitted solely "for the purpose of bearing upon her veracity, her credibility, and is no evidence whatsoever of the guilt or innocence of the defendant, Grady Kimbrough." The following dialogue then ensued between the prosecutor and the witness:

Q. "Isn't it a fact that you told Detective Broderson while you were at Anita's apartment * * * the defendant, Grady Kimbrough came to that apartment?

A. No.

Q. Isn't it a fact that you told Detective Broderson that the defendant came to the apartment and stated to you that he had shot a man in a tavern, but that the man had pointed a knife at him and * * * that he changed his story and said that he missed the man with the knife and hit a stranger who was not involved?

A. No.

Q. You did not say that to Officer Broderson?

A. No.

Q. Isn't it a fact that you told Officer Broderson that Grady Kimbrough gave you * * * a pistol to put in your purse?

A. No, I did not tell him that.

Q. And isn't it a fact that you told Officer Broderson that you called Grady Kimbrough's mother and she came and got you and Grady Kimbrough and took the two of you back to her apartment on Stony Island?

A. No, sir, I did not tell him that.

Q. Isn't it a fact that you told Officer Broderson that Grady Kimbrough was in the apartment with you on Stony Island?

A. No."

On cross-examination, Miss Evans testified that Grady Kimbrough was not in his mother's apartment on September 19, 1966, and that she had not seen him for the three or four weeks prior to that date. She indicated that Officer Broderson came to the apartment about 6:00 A.M. on September 19, 1966, and took her to the police station for questioning. She recalled having signed something at the station that morning. She stated that she was called to the station for questioning about ten times after September 19th. She denied having ever made any statements contrary to her trial testimony.

Officer Wesley Broderson was recalled as a State witness and testified that he had a conversation with Nora Evans in the early morning hours of September 19, 1966, at the apartment of defendant's mother. Defense counsel objected at this point to any conversation that the officer had with Nora Evans unless the State could prove that the defendant was present. The court overruled the objection and admonished the jury that the officer would be allowed to testify concerning the alleged conversation for the sole purpose of reflecting upon the credibility of Nora Evans. Broderson then testified as follows concerning the conversation of September 19, 1966:

"I asked Nora Evans did Grady take the gun with him, and she answered no, he didn't have a chance. I asked her why didn't you let me in when I first knocked at the door, and she said Grady had another gun and she was afraid someone would get, I don't remember if she said hurt or shot. I then pointed out a purse to her that was lying on a desk along the south wall of the apartment, and I asked her if that was her purse and as I did so, I picked up the purse and she said, 'Yes, it is,' and I said, 'Nora, is the gun in the purse'? She said, 'Yes, it is.' And after I had removed the gun from the purse, I asked her, 'Did you bring the gun here, or did Grady'?

She then told me that she had been at Nita's house and that Grady came there, she didn't say what time, but that he was all excited and he said he had shot somebody that was pointing a knife at him in a tavern. She said that they talked about it and later he changed and stated that he didn't shoot the man who pointed the knife at him, but that he hit a bystander in the tavern.

She said that while they were at Nita's apartment, she called Anna Mae Jones and she talked to Anna Mae and that Grady talked to her and that they asked her to come and get him out of there, and that later Anna Mae showed up (sic) her car and that she had this gun in her purse at the time and that Anna Mae drove her and Grady Kimbrough to the house at 6831 South Stony Island."

Detective William Looney testified that he checked the registration of People's Exhibit No. 1 and determined that the weapon was not registered.

Police Officer Cornelius Johnson testified concerning the circumstances of defendant's arrest and stated that he recovered a .32 caliber revolver from the defendant at the time of arrest.

People's Exhibit No. 1 was admitted into evidence over the objection of defense counsel. Officer Broderson was recalled and testified that in his opinion the defendant was 30 years of age.

For his first contention, defendant urges that it was reversible error

to call Nora Evans as a court's witness, to permit Broderson to testify as he did and to permit the prosecutor to ask questions containing statements allegedly made by Nora Evans which incriminated the defendant. We are in agreement with defendant on this point.

It is the well established law of this State that where the State's Attorney, for a sufficient reason which he shows to the court, doubts the integrity or veracity of an adverse witness, he is not required to call him as a witness for the People and vouch for his testimony, but such witness may be made the court's witness and may be cross-examined by either side. The purpose of this rule is to prevent a miscarriage of justice by having an eyewitness to the crime, for whose veracity neither party will vouch, fail to testify. But such a witness should be an eyewitness to the crime, and the cross-examination should be strictly limited to the direct issues and not be permitted on collateral matters. See *People v. Hundley* (1954), 4 Ill.2d 244, 122 N.E.2d 568, and the cases cited therein. We are doubtful that Miss Evans' relationship to the offense was so substantial as to bring her within the general rule enunciated in the *Hundley* case.

Moreover, suspicion attaches from the prosecutor's action in bringing each and every detail of Nora Evans' unsworn statement to the attention of the jury that he was not motivated by a purpose of impeachment alone, but rather sought under the guise of impeachment to get before the jury Miss Evans' statement that the defendant admitted the commission of the crime. Fundamental justice, however, will not countenance accomplishment by indirection of that which it will not permit directly. *People v. Tunstall* (1959), 17 Ill.2d 160, 161 N.E.2d 300.

■■ The purpose of impeachment is to destroy credibility, not to prove the facts stated in the impeaching statement. What the witness stated out of court and out of the defendant's presence is pure hearsay and incompetent. Legally it is not evidence of defendant's guilt and cannot be received as proof of any fact at issue. (*People v. McKee* (1968), 39 Ill.2d 265, 235 N.E.2d 625.) As was stated in *People v. Grigsby* (1934), 357 Ill. 141, 191 N.E. 264, and restated in the *McKee* case: "If the witness admitted making the previous statement, it would prove nothing except that he, an admittedly unreliable witness, had said so. If the witness denied making the statement the matter would necessarily end there, because to pursue it further would be trying a collateral issue rather than a fact material under the indictment. The defendant would thus be hopelessly enmeshed in a prejudicial situation without anyone having assumed responsibility or liability for perjury." To permit the prosecutor to prove by way of impeachment that the witness said that the defendant said certain things would be dangerous in the extreme. It would make

it possible for anyone, in effect, to confess for a defendant without any liability for perjury.

■■■ We hold, therefore, that the admission of Officer Broderson's testimony concerning what he was told by Nora Evans, used for the alleged purpose of impeachment, bore too heavily upon defendant's guilt or innocence to allow its admission. We do not believe that the prejudicial effect of such evidence upon the jury could be effectively controlled by the court's admonitions that such evidence was being introduced solely for impeachment purposes. Under these circumstances, we can only conclude that the jury's finding was based in part on incompetent evidence which was so highly prejudicial to the defendant as to deny him his right to a fair and impartial trial. We believe that justice will be better served in a new trial, free from such error, and we remand the case for that purpose.

■■■ Having thus decided, we need consider only one additional issue: whether the alleged murder weapon (People's Exhibit No. 1) was properly introduced into evidence at trial. The general rule which governs this issue is that a weapon is admissible into evidence only where there is sufficient proof to connect it to the defendant and the crime. (*People v. Germany* (1963), 28 Ill.2d 154, 190 N.E.2d 713; *People v Jones* (1961), 22 Ill.2d 592, 177 N.E.2d 112.) The resolution of this issue involves, therefore, a close examination of the evidence bearing on a connection between the weapon and the defendant. The evidence in this case, which we have presented in great detail, shows only that officer Broderson removed People's Exhibit No. 1 from Miss Evans' purse, that the defendant apparently gave that weapon to Miss Evans and, according to Nellie Diggs, that its handle was similar to the one she saw in the tavern. There is no reliable evidence which indicates that the defendant was in possession of the particular weapon at the time of the offense, that it was the weapon used in the crime or that it did, in fact, belong to the defendant. We are, therefore, of the opinion that a sufficient connection between the weapon and the defendant was not established. The admission of the weapon into evidence was erroneous.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and cause remanded with directions.

McCORMICK, P. J., and BURKE, J., concur.