THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MELVIN BAILEY, Defendant-Appellant.

(No. 57088; )

First District (2nd Division)—February 19, 1974.

Kenneth L. Gillis and Jack P. Rimland, both of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago (Elmer C. Kissane and Patrick J. McNally, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

A sixteen-count indictment charged defendant Melvin Bailey and two codefendants, Andrew McChristian, Edward Dinkins, with aggravated assault and aggravated battery on five persons, attempts to murder and a conspiracy to murder the same five people. Prior to their trial, on motion of the State, the charges of aggravated assaults and aggravated batteries were dismissed. Defendant, McChristian and Dinkins then went to trial before a jury on the remaining counts.

At the close of the State's evidence, the trial court directed the acquittal of Dinkins on all the charges. However, the State's cases against defendant and McChristian went to the jury. It returned verdicts that acquitted McChristian of the attempts to murder but found him guilty of conspiracy. Defendant was found guilty of the five attempts and the conspiracy; the trial court sentenced him to serve six concurrent terms of ten to fifteen years. McChristian took a separate appeal; and in an opinion which contains a detailed statement of the facts from which the charges arose, we have today reversed his conviction. *People v. McChristian*, 18 Ill.App.3d 87.

In this appeal, the only substantive issue is whether the State's impeachment of a court witness introduced hearsay evidence that prejudiced defendant's right to a fair trial. Since this issue is raised from events that occurred at the trial, and our opinion in *McChristian* states the facts which underlie the indictment, we will not restate the events that gave rise to the charges, except as our discussion of the issue may require.

## I.

At defendant's trial, the third witness called by the State was David Barksdale, one of five persons named in the indictment as victims of the assaults, the batteries, the attempts and the conspiracy to murder. Barksdale refused to testify because he feared self-incrimination. Because he invoked his right not to incriminate himself, the State petitioned the trial court to grant him immunity. This was done, and immediately thereafter, one of the assistant state's attorneys made an oral motion that

Barksdale be called as a court's witness. The defendants objected, but after a hearing outside the jury's presence, the motion was granted with the understanding that the trial judge was to tell the jury that Barksdale was a court's witness, one whose testimony was not vouched for either by the prosecution or the defense.

Barksdale then testified and in answer to questions asked by an assistant state's attorney, told the jury that on the evening of May 8, 1968, he drove his automobile past 6526 South Ellis Avenue, Chicago, and shooting of guns erupted. He said he did not know who shot at his automobile. Although he said he knew the defendant, he denied seeing him on the evening of May 8, 1968, at or near 6526 South Ellis. In answer to a question, Barksdale said that he saw McChristian and Dinkins at the scene of the shooting, but he did not see them fire any guns at his automobile. He denied seeing either Dinkins or McChristian with a gun in his possession. Barksdale was asked whether at a police station, after the shooting, he saw defendant and McChristian and had a conversation with them. His answer was that he saw them there, but that "they remained silent."

Barksdale was then asked whether in the state's attorney's office, shortly after the May 8, 1968, shooting, he spoke to an assistant state's attorney and on that occasion said that defendant, McChristian and Dinkins "shot at me on May 8". Barksdale admitted making the statement, but said that what he said on that occasion was a lie. Then, Barksdale was asked whether eight months before the trial he was in the state's attorney's office, where, in the presence of one of the three policemen, he told the assistant state's attorney in the case that defendant and McChristian shot at him on May 8, 1968. Barksdale's answers were at first evasive; but he was pressed by questions aimed at determining whether it was true he had said, eight months before the trial, that the defendants had fired at him on May 8, 1968. After a number of questions to which he gave unresponsive answers, Barksdale said that he made the staatement; but at the time, he was angry, and "I would have said anything." Next, Barksdale was asked whether a week before the trial he had not made statements to an assistant state's attorney that defendant, McChristian and Dinkins had guns in their possession on May 8, 1968, and had shot at him. He said he had because he was angry at one of the policemen and "I was still mad at Bailey [the defendant]." Then, he was asked whether he had been questioned the day of the trial concerning the shooting incident of May 8, 1968. Barksdale said he had. The assistant state's attorney who was questioning him asked Barksdale, "And did you tell me this afternoon that Melvin Bailey shot at you on May 8, 1968?" Barksdale answered, "I told you that because I

came down to court—I am in court." The assistant state's attorney then turned to the trial judge and asked, "Your Honor, may I just have an answer?" Barksdale was directed by the trial court to answer the question. His response was, "Yes." Further questions were put to Barksdale concerning McChristian. After answers, some evasive, some unresponsive, the assistant state's attorney asked Barksdale, "Did you tell Mr. Novelle and myself today, this afternoon, that you saw Mr. McChristian with—Mr. Dinkins with a rifle in the 6500 block of South Ellis?" Barksdale answered, "Yes."

Barksdale was then asked whether sometime after May 8, 1968, he had not told an assistant state's attorney, Matthew Walsh, about a conversation he had with defendant and McChristian in the area police station the evening of May 8, 1968, after the shooting. Barksdale was asked whether defendant had said to him, "I missed you this time." After first making an unresponsive answer, Barksdale admitted telling Walsh about the conversation, but said he did so because he was angry. When asked if he told Walsh that McChristian had said to him, "We will get you next time," Barksdale said that he did, but "I was still lying, though." After being pressed by further questions concerning a conversation which the State claimed he had with defendant and McChristian the evening of May 8, 1969, Barksdale disclaimed recollection of it.

To impeach Barksdale, the State announced it was calling Matthew Walsh. There were objections by all the defendants. As a result, the trial judge agreed that before Walsh testified he would tell the jury

"* * * that while it is proper to impeach or discredit a witness by proving statements made by such witnesses at some other time and place, different from the testimony in this case on trial, still any statement that any witness may have made at such other time and place is not to be considered by you as any evidence as to the guilt or innocence of the defendant or any of them. Evidence that on some former occasion a witness made a statement different from or inconsistent with his testimony in this case should only be considered by you in deciding the weight to be given that witness [sic]."

Defendants insisted on their objections, but Walsh was allowed to testify that in his office "* * * last Friday at approximately 1:15 P.M.," Barksdale told him "that Bailey made a comment to him about the fact that they didn't get him that night or they were sorry they didn't get him. And McChristian began laughing and said, we will get you next time." After several of defendants' objections were overruled, Walsh was permitted to tell the jury that as Barksdale was leaving his office, he asked

him, "\* \* \* as I had once or twice during the conversation, \* \* \* if what he was telling me was the truth. He indicated it was the truth and I asked him at that time whether or not he could testify to the truth in court, and he shrugged his shoulders at that time. And I said, are you afraid of them, meaning—." Walsh was interrupted by an objection of one defense counsel; and in response, the trial court ruled that "[t]he last part of the answer is stricken and the jury is instructed to disregard it." Then Walsh was asked, "Did Mr. Barksdale tell you that what he told you, the—concern the facts in this case, was the truth?" Walsh answered, "Yes, he did."

It is from this examination of Barksdale, and his impeachment through the testimony of Matthew Walsh, that defendant contends he was prejudiced by inadmissible hearsay evidence which the jury was allowed to hear and on which they returned their verdicts finding him guilty of five attempts to murder and conspiracy to murder five persons.

## II.

■■ In determining whether this contention is sound, we are constrained to observe that when Barksdale first testified, he told the jury that neither defendant, McChristian nor Dinkins, fired at him or his companions when on the evening of May 8, 1968, he drove his automobile past 6526 South Ellis Avenue in Chicago. However, it was the State's theory that this was not the truth. The truth, according to the State, was that the three defendans fired guns a Barksdale and his companions on the evening in question, a truth which Barksdale had asserted to four assistant state's attorneys. Therefore, to prove the truth of what Barksdale had asserted, the State, by the questions its attorneys asked him, and by Walsh's testimony, established that Barksdale, out of court, had accused defendant, McChristian and Dinkins of shooting at his automobile, as the State claimed. This was hearsay evidence.

"Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." (*People v. Carpenter,* 28 Ill.2d 116, 121, 190 N.E.2d 738; Wigmore on Evidence (3d ed. 1940), § 1361 *et seq.;* Cleary, Handbook of Illinois Evidence (2d ed. 1963), § 17.1.) It was not admissible. (*People v. Hundley,* 4 Ill.2d 244, 122 N.E.2d 568.) The only question is whether admission of this hearsay evidence prejudiced the defendant.

● 2 It has been held that when a witness is made a court's witness, he may be cross-examined by either side; but his cross-examination should be strictly limited to the direct issue. (See *People v. Kimbrough,* 131

Ill.App.2d 36, 266 N.E.2d 431.) In this case, Barksdale was the only victim of the crime who appeared as a witness. He was made the court's witness at the State's request, and when he first testified, he gave evidence which, if believed by the jury, would have exculpated all the defendants on trial. For this reason, elementary fairness would dictate that the State could, within limits and with proper cautionary instructions, impeach Barksdale even with prior inconsistent statements he might have made. (See *People v. Marino*, 44 Ill.2d 562, 256 N.E.2d 770; *People v. Tate*, 30 Ill.2d 400, 197 N.E.2d 26.) However, in the attempt to impeach Barksdale, the State could not introduce hearsay evidence that bore directly on defendant's guilt or innocence. (*People v. McKee*, 39 Ill.2d 265, 235 N.E.2d 625; *People v. Collins*, 49 Ill.2d 179, 274 N.E.2d 77; *People v. Bacon*, 2 Ill.App.3d 324, 276 N.E.2d 782.) Nor could the State impeach Barksdale on matters collateral to the issue before the jury. *People v. Boulahanis*, 394 Ill. 255, 68 N.E.2d 467; *People v. Yocca*, 84 Ill.App.2d 423, 228 N.E.2d 599.

We have examined the record and find that, contrary to the State's argument in this appeal, the questions asked Barksdale concerning his out-of-court assertions were numerous and repetitious, all aimed at putting before the jury his statements, made to four assistant state's attorneys, that defendant, McChristian and Dinkins had fired on his automobile on the evening of May 8, 1968. Thus, in the attempt to impeach Barksdale, the State put into evidence inadmissible hearsay that touched directly on defendant's guilt of the crimes for which he was on trial. (See *People v. Barragan*, 337 Ill. 531, 169 N.E. 180; *People v. Tunstall*, 17 Ill.2d 160, 161 N.E.2d 300.) By the questions asked him and the answers that the State extracted from him, the jury was repeatedly told that on three occasions Barksdale had accused defendant, McChristian and Dinkins of firing at him and his companions on the evening in question. This was prejudicial evidence. See *People v. Paradise*, 30 Ill.2d 381, 196 N.E.2d 689.

The testimony of Matthew Walsh intensified the prejudicial effect of Barksdale's cross-examination. Walsh told the jury that in their conversation, Barksdale told him that in the police station defendant admitted having shot at him the evening of May 8, 1968, and that McChristian laughed and said, "We will get you next time." Then, Walsh, over defendant's objection, was allowed to testify that he asked Barksdale whether what he said was the truth and Barksdale assured him that it was. It is true that, before Walsh testified, the trial court gave the jury an instruction which cautioned them about their consideration of any prior inconsistent statement of a witness. However, this instruction was confusing to say the least; the inconsistent statements to which it referred were plainly

prejudicial. Therefore, as we had occasion to say in *People v. Kimbrough*, 131 Ill.App.2d 36, 45, 266 N.E.2d 431, "We do not believe that the prejudicial effect of such evidence upon the jury could be effectively controlled by the court's admonitions that [it] was being introduced solely for impeachment purposes."

■■ In *People v. Grigsby*, 357 Ill. 141, 191 N.E. 264, the State called a woman as its witness to prove that on the night of the shooting in question, the defendant came to her home and told her that he "had shot a couple of guys." Preliminary questions disclosed that her testimony was not going to be satisfactory to the state's attorney, who then asked leading questions. Objections to these were sustained by the trial court and the woman was withdrawn as a witness. A short time later, she was recalled and made the court's witness. Then, for a purpose analogous to Walsh's testimony in this case, she was subjected to cross-examination concerning statements she allegedly had made to the state's attorney and his secretary, consistent with the State's theory of what the defendant had told her the night of the shooting. The Illinois Supreme Court reversed the conviction, holding it was prejudicial error for the trial court to allow the State to cross-examine the witness on what was a collateral issue. We reach the same conclusion in this case. The issue before the jury was not whether Barksdale told the truth when he spoke to the four assistant state's attorneys; the issue was whether defendant was guilty of attempts to murder Barksdale and his four companions and of conspiring with McChristian to do so. Therefore, the trial court erred in permitting the State to place before the jury hearsay evidence that prejudiced the defendant's right to a fair trial. The judgment is reversed and the cause is remanded for a new trial. *People v. Montgomery*, 51 Ill.2d 198, 282 N.E.2d 138; *People v. Hannah*, 11 Ill.App.3d 232, 296 N.E.2d 387.

Reversed and remanded with directions.

HAYES, P. J., and DOWNING, J., concur.