(No. 32638.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CARL BUSH, Plaintiff in Error.

*Opinion filed March 23, 1953.*

HAROLD S. ROSENFIELD, of Chicago, (GEORGE N. LEIGHTON, of counsel,) for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, and LOUIS M. GORDON, all of Chicago, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Plaintiff in error, Carl Bush, was found guilty of murder by the criminal court of Cook County, as a result of a trial without a jury, and a sentence to fourteen years in the Illinois penitentiary was imposed. Then followed the

usual motions for a new trial and arrest of judgment, which were denied. Redress was also sought by the defendant because he was allegedly lured by the assistant State's Attorney of Cook County into his decision to waive a jury and submit his cause to the court.

The principal issue that must be resolved in this review on writ of error is whether the trial court was correct in his finding that the defendant had committed murder. There is not a great amount of conflict in the proof adduced on behalf of the prosecution and the defense. With only slight differences these are the facts surrounding the occurrence that ended in the death of Lloyd Sterling, which resulted from wounds inflicted by the defendant with a pocketknife.

It was on August 28, 1951, that Carl Bush, age 20, in company with his girl friend, Flossie Prater, were walking west on the south side of Forty-eighth street in the city of Chicago, after attending a social function sponsored by their church. Lloyd Sterling, in company with his brother and two other boys, were also walking westwardly on the same street and, when they overtook the defendant and Miss Prater, they made some remarks of a vulgar and insulting nature. When they reached the corner of Forty-eighth and Champlain Avenue, the decedent and his companions commenced an argument with the defendant. They called the defendant vile names and provokingly told him that those were "fighting words." Defendant said he would fight any one of them singly but not collectively. The crowd grew in numbers and the argument in intensity, and the scene was so disorderly that a member of the neighborhood called the police and the threatening group was apparently dispersed by them. This was only for a moment, however, for they reassembled soon after the departure of the squad car. Defendant rejoined Miss Prater and escorted her to the entrance of her home at 4804 Champlain Avenue, which was only a short distance from the corner of the intersection of Forty-eighth Street and Champlain Avenue

where the argument took place. The defendant testified that he was struck in the back by one of the boys just as he was entering the premises of his girl friend. He took her to the door of her home and upon returning to the sidewalk he was surrounded menacingly by the same group of youngsters estimated in number from ten to nineteen, most of whom were in their early teens, all of whom were friends of the decedent and strangers to the defendant. The defendant further testified that by some mysterious process a knife, uniformly described as having a blade 3½ inches in length, was passed into his hand, and further, "After I got the knife the Sterling boys and the rest of the boys started crowding me and I was cutting them to keep them off, I was cutting at all of the boys—not any particular one—I was not taller than all the boys—there were two or three there about my size—I do not see them in the courtroom. I broke and ran after I got loose."

After the altercation, the defendant went to his home and then to the police station where he surrendered himself and gave his statement which was reduced to writing and offered by the State and received in evidence at the trial. The defendant is 20 years of age, unmarried and was living at home with his father and mother, and had been employed for some years as a houseman in Wilmette, Illinois. His education was limited to the fourth grade, and he was fourteen years of age when he quit school. Evidence was offered on his behalf as to his good reputation for being a peaceable and law-abiding citizen prior to his indictment. The State did not see fit to rebut this evidence.

On behalf of the prosecution, ten boys testified that they were present on the occasion in question. Their testimony was monotonously similar. However, their account was not essentially different from that of the defendant. Sterling, the decedent, and his brother and two other boys started the trouble with their insulting slurs. Just a moment later they defied the defendant to proceed any further

with his sweetheart, and when he left her home they confronted him in increasing numbers. In view of his previous skirmish with these boys, it was apparent to the defendant that this crowd wanted to fight and that he was hopelessly outnumbered. There were only a very few slashes with his knife, but unfortunately one proved to be fatal. Of dubious verity is defendant's fantastic account of how the weapon came into his hand. He did not have a friend in the crowd who would have the slightest interest in his safety. This mythical story is the product of ignorance, fright and desire for exculpation. The truth would have been better than this fiction.

The defendant was where he had a lawful right to be and it was not his duty to flee, but being assaulted first he had a right to stand his ground and if reasonably apprehensive of serious injury was justified in taking his assailant's life. (*People* v. *Durand,* 307 Ill. 611.) We have repeatedly held that one who is unlawfully assaulted and put in apparent danger of his life or of great bodily harm need not attempt to escape but may repel force with force, even to the taking of assailant's life, if necessary or apparently so, to prevent bodily harm. *Hammond* v. *People,* 199 Ill. 173.

In the case of *People* v. *Papas,* 381 Ill. 90, at page 95, this court said: "We have repeatedly held that, in order to prove a charge of murder, there must be a showing that the killing was done with malice aforethought, either express or implied. * * * In order to establish express malice, there must be proof of deliberate intention. Implied malice is presumed where no considerable provocation appears or when all the circumstances of the killing show an abandoned and malignant heart."

The killing in this case lacks many of the essentials requisite to constitute murder. There was no showing of malice either express or implied, there was no intention to kill and there was no indication of an abandoned and malignant heart. It cannot be reasonably determined that

the facts presented in this case justify the conclusion that the homicide was committed without provocation. It is our considered opinion that the slaying of Sterling by defendant was a justifiable act of self-defense, and the trial court should have entered a judgment finding the defendant not guilty of murder.

Having reached this conclusion, it is unnecessary for us to consider the other errors assigned by plaintiff in error.

*Judgment reversed.*