Lisco and Field, of Chicago (Barry L. Kroll and Robert F. Lisco, of counsel), for appellees.

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LACEY LOGGINS, Defendant-Appellant.

(No. 58753;

First District (2nd Division)—June 25, 1974.

*Rehearing denied August 7, 1974.*

LEIGHTON, J., took no part.

Robert L. Edwards, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Jerome Charles Randolph, Assistant State's Attorneys, of counsel), for the People.

PER CURIAM:

After a bench trial, defendant was found guilty of the offense of voluntary manslaughter, in violation of section 9—2(b) of the Criminal Code, and was sentenced to a term of 3 years to 10 years. (Ill. Rev. Stat. 1971, ch. 38, par. 9—2(b).) He appeals, contending that he was not proven guilty beyond a reasonable doubt, that he was denied a fair trial by certain rulings of the trial court, and that the findings of guilt was based upon irrelevant and prejudicial evidence.

On October 30, 1971, Elmer Russell was shot by the defendant and later died of the wound so inflicted. The indictment charged defendant with the offense of voluntary manslaughter, in that he "shot and killed Elmer Russell with a shotgun, unreasonably believing at the time of the killing that the circumstances were such as to justify the killing * * *." Defendant maintained at trial that he had killed the deceased while under the reasonable, although mistaken, belief that the deceased had been armed with a handgun and had intended to harm him.

Robert Norvall, aged 23, testified for the People that on October 30, 1971, he went to a building on East 48th Street in Chicago about 9 P.M. to pick up his younger brother, Bernard, who was in attendance at a party. An argument developed between Robert Norvall and a 17-year-old female, Fabian Carter, concerning an improper advance made by him upon her; the argument continued outside the building where Carter drew a handgun on Norvall. Robert Norvall proceeded to his home a short distance away, and on the way he met Elmer Russell, the deceased, who had apparently witnessed the incident. On their return to the building in question, Norvall and Russell discussed "getting drunk", and Russell also told Norvall that he would handle the matter between Norvall and the girl. Russell told Norvall to stand away; Russell walked toward Fabian Carter and a group of youths which had gathered outside the building; a shot was fired, and Russell fell to the street. Robert Norvall noticed nothing unusual about Russell at the time he approached the crowd; he did not see the crowd back away as Russell approached; and, although Russell had been drinking that evening, Norvall observed

him with no liquor bottle at that time. Robert Norvall thereupon fled the scene. Elmer Russell was 42 years of age at the time of his death.

Chicago Police Officer Haywood Liggett investigated the shooting. A search of the area and of the deceased's clothing disclosed no weapon or other like object; although 8 to 10 police vehicles arrived at the scene, the officer did not know whether any of the other officers found a weapon or a liquor bottle upon a search of the scene.

Bernard Norvall, aged 14, testified for the People that his brother arrived at the party in question to pick him up and an argument ensued between his brother and a female named Fabian. His brother left the building and Fabian followed him; Fabian drew a handgun on his brother; and Elmer Russell, who had been outside, told his brother to stay back and approached Fabian who was among a group of seven or eight youths assembled outside the building. When Russell approached to within 8 to 15 feet of the crowd, the defendant walked out of the building with a sawed-off shotgun. While walking toward the crowd, Russell held his hand inside his coat; people in the crowd shouted: "Shoot before he shoots you"; and the defendant fired the shotgun at Russell. Prior to the shooting Russell did not move the hand held inside the coat, and nothing was said between Russell and the defendant. The witness had not seen his brother or Russell with a weapon that evening, nor had he seen Russell with a liquor bottle.

Clifton Longs, aged 19, intially testified for the People but was later made a court's witness upon request by the prosecutor. Longs testified that he had attended the party in question with the defendant, Larry Freeman, Fabian Carter, and another person. He testified that Elmer Russell had approached a crowd which had gathered in front of the building, and that he (Longs) heard a shot emanate from a shotgun held by the defendant. After the shooting, the defendant and the witness went to a vacant building frequented by people in the area, and the witness testified that he placed nothing into the building. The prosecutor then represented to the court that Longs had previously told him that he (Longs) had placed the shotgun into the building and later removed it. Thereupon, at the request of the prosecutor, the court made Longs a court's witness. It was then educed from the witness that the shotgun and a handgun, the latter of which had been in the possession of Larry Freeman on that evening, had been hidden in the vacant building after the shooting and had thereafter been removed from the building to the witness' home. A defense objection was raised to the testimony concerning the handgun and was denied by the court, subject to the People's introduction of evidence tying that weapon to the case. Neither the witness nor the defendant had had words with Elmer Russell prior to the

shooting, nor had the witness known Russell prior to the shooting. After the shooting had occurred and after the shotgun and the handgun had been hidden, the witness, the defendant, and the three others who had arrived together at the party proceeded to another party.

Clifton Longs further stated that he had given a statement to the police after the shooting, apparently in writing and signed by him. A defense objection to Longs' testimony was based upon the failure of the People to furnish a copy of that statement to the defendant upon the latter's request in a pretrial discovery motion. The objection was denied after the People represented to the court that the statement was not in the People's file and after it was also determined that the statement was not in the police file in the case.

Fabian Carter, aged 17, testified for the People that she had had an argument at the party with Robert Norvall because he had made improper advances toward her; that she and Norvall had gone downstairs where she had pointed the handgun at him, which weapon she had received from Larry Freeman; and that, after that incident, she had heard a gunshot from behind her. She had seen no weapon in the defendant's hands, whom she had known prior to the party.

Tony Hackman, aged 19, testified for the People that he had attended the party in question and had observed Elmer Russell walk up to Larry Freeman outside the building, Russell holding his hand inside his jacket. Freeman at that time was in possession of a handgun, whereas the witness did not see Russell with a gun; the crowd of people which had gathered outside the building was moving away from Russell as he approached, and the witness heard shouts from the crowd that Freeman should shoot "because he had a gun." The witness did not see defendant prior to the shooting.

Chicago Police Officer Timothy Tidmarsh testified for the People that he investigated the shooting and interviewed several witnesses at the scene, among whom were Longs and Robert Norvall. The witness then recovered a shotgun, used by defendant on the night in question, and a handgun, used by Freeman and Carter on the night in question, from the residence of Clifton Longs, along with shotgun shells and several other types of munitions. The officer also secured custody of defendant in Memphis, Tennessee, on December 30, 1971, where the witness had gone to effect defendant's extradition to Illinois. Defendant was advised of his constitutional rights and made a statement to the officer that, at the time of the shooting, the defendant thought that Russell was armed but that the defendant did not see a gun in his possession. An objection to the officer's testimony concerning the statement, on the grounds that the statement did not appear on the People's answer to the defendant's

pretrial discovery motion, was denied. Questions asked of the officer by the defense (whether defendant had "voluntarily" turned himself over to the Memphis police and whether the officer had trouble in bringing defendant back to Illinois) were objected to by the People and the objections were sustained.

Defendant's mother testified on defendant's behalf that she had been visited by the police on October 31, 1971, relative to her son's having shot someone, after which she had sent her son by bus to Memphis (to her father's house there). The witness later wrote to defendant and advised him that the police had returned to the apartment and were looking for him. Objections by the People to defense questions (whether the defendant had protested the witness' sending him to Tennessee and whether he had "voluntarily" left Chicago) were sustained.

Defendant testified in his own behalf that he was 18 years of age and had attended the party in question with Freeman, Longs, Carter, and another youth; and that he did not recall seeing the Norvall brothers at the party. The defendant held no conversation with either Robert Norvall or Elmer Russell that night, nor did he know whether words were exchanged between Robert Norvall and Fabian Carter. He testified that area teenagers were causing trouble with defendant and his companions, and that he and Longs went to Longs' residence where they secured a shotgun. Upon their return to the party, they learned that the teenagers had since left; the defendant then took the shotgun from Longs, and the two youths left the party to return the weapon to the Longs' apartment. Longs and the defendant met Larry Freeman in the vestibule of the building where the party was being held; a crowd of persons from the party had gathered outside the building. The defendant held no conversation with anyone at that time nor noticed anything in the hands of Longs or Freeman. Elmer Russell, whom the defendant had never seen and with whom he had had no contact in the past, walked toward the building, wearing a suitcoat and holding his hand inside his trouser waistband. As Russell approached, the crowd backed away; Russell moved his hand in such manner as to indicate to defendant that he had a gun, and the defendant saw what he thought was a portion of a gun in Russell's possession. The defendant thought Russell was going to kill him, and he fired the shotgun at Russell for his own protection. The defendant testified that he had first noticed Russell when he (defendant) was inside the vestibule of the building and Russell was outside the building, about 4 feet away. After the shooting, the shotgun was hidden in the vacant building, and the defendant, Longs, and the others went to another party. A question by defense counsel (why defendant did not notify the police immediately after the shoot-

ing) was objected to by the People and the objection was sustained, the court noting that the defendant's mother had placed him on a bus. Defendant also testified that he turned himself over to the Memphis police, because he knew that he was wanted and because he wished to turn himself in. The defendant stated that he gave no statement to the police at the time.

The shotgun and the shotgun shells retrieved by the police from Longs' residence were admitted into evidence; the handgun and the other munitions found in Longs' residence were denied admission into evidence. Defendant was found guilty of voluntary manslaughter and, after a subsequent denial of defendant's motion for acquittal and after a hearing in aggravation and mitigation, he was sentenced to a term of 3 years to 10 years in the penitentiary.

Defendant first contends that he was not proven guilty beyond a reasonable doubt because the People failed to prove that his contention (that he had acted under an "apparent imminent threat of death or great bodily harm" which justified the use of force for his own protection) was an unreasonable belief. He argues that the trial court, rather than considering the reasonableness of his belief under the circumstances confronting him, concluded that the deceased was not armed at the time of the shooting and considered that conclusion alone in arriving at the finding of guilt. We disagree.

■■ The foregoing summary of the evidence demonstrates that the People adduced sufficient evidence from which the trier of fact could have found that the defendant had committed the offense of voluntary manslaughter beyond a reasonable doubt, in that he had entertained the unreasonable belief that at the time of the shooting the circumstances justified the taking of the life of the deceased in self-defense, in violation of section 9—2(b) of the Criminal Code. The defendant was in possession of a sawed-off shotgun during a party; a disturbance arose between a friend of his and a friend of the deceased; a weapon was drawn during that disturbance; the deceased intervened in the disturbance and approached a crowd of persons which included the defendant and those involved in the disturbance; the deceased approached the crowd with his hand in his waistband but made no motions or gestures with that hand; persons in the crowd were urging that shots be fired; and the deceased was shot by the defendant. The deceased was found to have been carrying no gun or other object which could have been mistaken for a gun; and the defendant told the police that, although he thought the deceased was armed, he saw no weapon. A question of fact was presented for the trial court.

Whether defendant's evidence established that he reasonably acted in

self-defense, in light of the circumstances confronting him, was likewise a question for the trier of fact. (*People v. Jordan*, 18 Ill.2d 489, 165 N.E. 2d 296.) The trial court specifically commented that he found the defendant's version of the incident incredible; and he further commented upon the "immaturity" of the defendant and of the persons in the crowd who had exhorted that shots be fired without regard to whether the deceased was armed, thereby in essence finding that defendant's actions and his alleged belief that he was acting in self-defense were unreasonable.

The fact that no gun or other object capable of being mistaken for a gun was found in the deceased's possession militates against defendant's position of self-defense; defendant himself told the police officer that he saw no gun. Further, the reasonableness of defendant's actions must be viewed in light of the evidence that a crowd of youths were urging that shots be fired, that the deceased was approaching Larry Freeman prior to the shooting, that the defendant did not notice the deceased until the deceased was about 4 feet away, and that the defendant and the deceased were total strangers and had had no prior contact before the shooting.

Defendant seeks to support his position that he reasonably thought that the deceased was armed by alluding to the evidence that Robert Norvall had returned to his home after he had been confronted with a gun by Fabian Carter, where he could have procured a gun and could have given it to the deceased, and by suggesting that someone in the large crowd, which had gathered at the scene after the shooting, could have removed the weapon from the deceased's body or from the area. But defendant testified that he had known nothing of the disturbance between Robert Norvall and Carter, thereby negating any reason for his alleged suspicion that Norvall had obtained a gun. The conclusions arrived at by defendant from the evidence alluded to in this regard are based upon conjecture, unsupported by fact.

■■ Defendant also argues that the trial court in arriving at the finding of guilty improperly considered solely the conclusion that the deceased had not been armed. Defendant's argument in this regard arises from the specific finding of the trial court that the deceased had not been armed, which finding arose out of the issue of fact created by the evidence adduced by the People and by the defendant as to whether the deceased was in fact armed. However, in the same finding the court also noted that it was "more reasonable" to believe that, under the circumstances, it was "immature" of the defendant to have secured a shotgun and also to have acted upon the exhortation of another "immature" person that the deceased was armed, without regard to whether such was

in fact the case. The trial court's finding of guilt was not based solely upon the conclusion that the deceased was unarmed, but was also based upon the court's finding as to the reasonableness of the defendant's belief and actions under the circumstances.

The cases cited by defendant in support of his position are not applicable to the instant circumstances: *People v. Organ*, 345 Ill. 339, 178 N.E. 73; *People v. Brumbeloe*, 97 Ill.App.2d 370, 240 N.E.2d 150; *People v. Bush*, 414 Ill. 441, 111 N.E.2d 326.

Defendant next contends that he was denied a fair trial by rulings of the trial court as to certain evidence. He argues that the court was in error in failing to impose sanctions upon the People by striking the testimony of Clifton Longs and by striking the testimony of Officer Tidmarsh concerning the statement made by defendant that he saw the deceased with no gun, in light of the People's failure to provide the defendant with Longs' statement and with the defendant's statement as requested by defendant's pretrial discovery motion pursuant to Supreme Court Rule 412. (50 Ill.2d R. 412.)

Rule 412 requires that the People provide a defendant with such information as defendant here requested. The Rule further provides that the People shall make a diligent good-faith effort to discover such material and directs the trial court to require any appropriate governmental body within the court's control to make such material available.

■■ Clifton Longs testified that he had made and signed a statement while in police custody. On cross-examination, Officer Tidmarsh admitted that Longs had made a statement to him which had been recorded by a court reporter, typed up, and signed by Longs. But the prosecutor represented that he had no such statement in his file, but had only the statements of the Norvall brothers; the court also determined of the police officer in attendance at the trial that the police file contained no such statement. Notwithstanding the possible advantages such statement might have provided relative to whether Longs should have been made a court's witness or relative to the impeachment of Longs, the trial court did not commit error in failing to strike the witnesses' testimony as requested by defendant. Under the circumstances, the procedures followed by the People and the police, and the determination made by the trial court, substantially complied with the requirements of Rule 412. Even were the requirements of Rule 412 to be regarded as not having been substantially complied with, there is no showing of consequential prejudice and the evidence of guilt is overwhelming.

Defendant also argues that the trial court committed error in refusing to allow the introduction of testimony as to whether the defendant had "voluntarily" left Chicago, had turned himself over to the Memphis

police and had returned to Chicago, and of why he had not reported the incident to the police after its occurrence. He states that such evidence was necessary to offset the negative inference which generally arises from the fact that an accused has fled the jurisdiction.

Several of the questions asked of the respective witnesses in this regard called for conclusions on their part and objections thereto were properly sustained. Nevertheless, the trial court did permit the introduction of evidence concerning whether defendant was forced to go to Memphis.

■■ Defendant also argues that the trial court improperly failed to strike Officer Tidmarsh's testimony relative to the statement made to him by defendant that the deceased had no gun in his possession at the time of the shooting. As represented by the prosecutor, and as the record affirmatively discloses, the People's answer to the defendant's pretrial discovery motion contains a reference to the defendant's statement in question. The trial court committed no error in either of the rulings relative to the production of the statements in question.

The final contention raised by defendant is that the trial court improperly allowed into evidence testimony relating to the handgun observed in the possession of Freeman and Carter on the night of the shooting, without the introduction of evidence tying that weapon to the case; he also contends in this regard that the court improperly relied upon such evidence in arriving at the finding of guilt, as is allegedly evidenced by the court's comments at the conclusion of the case relating to the presence of guns in the instant situation and to the use of guns in society.

■■ The trial court permitted the testimony concerning the handgun in question, which weapon was introduced for identification as a People's exhibit, contingent upon the introduction of evidence by the People to tie that weapon to the case. At the conclusion of the case, the court refused to allow that weapon and all other munitions introduced for identification, other than the shotgun and the shotgun shells, to be introduced into evidence. Defendant's contention in this regard is consequently without foundation, and the cases cited by him in support of his position are without application to the case at bar: *People v. Miller*, 40 Ill.2d 154, 238 N.E.2d 407; *People v. Kimbrough*, 131 Ill.App.2d 36, 266 N.E.2d 431.

The argument is also raised that the trial court considered such evidence in arriving at a determination of guilt. The comments made by the court prior to the finding of guilt demonstrate that the court was concerned primarily with the defendant, with his possession of the shotgun, and with the firing of the shotgun while defendant was being

exhorted to do so by a person in the crowd. The comments made by the court relative to the presence of weapons at the scene and to the use of weapons in society were general impressions of the court, and there appears no basis for a conclusion that such had a bearing upon or in any manner affected the trial court's determination of guilt in this case.

For these reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LEIGHTON, J., took no part in the consideration or decision of this case.